UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JEREMIAH CORBIN,

    Petitioner,

v.

WARDEN BARNHART,

    Respondent.

No. 6:19-CV-75-REW

OPINION & ORDER

\*\*\*   \*\*\*   \*\*\*   \*\*\*

*Pro se* Petitioner Jeremiah Corbin—a federal inmate[1]—seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* DE 1. Corbin challenges his sentence's career offender enhancement. The Court conducts an initial review under 28 U.S.C. § 2243. For the following reasons and under the applicable standards, the Court **DENIES** the petition.[2]

---

[1] Corbin, at petition filing, was housed at FCI Manchester, in Manchester, Kentucky. Though Corbin was subsequently transferred to Pennsylvania's FCI McKean, Corbin properly filed his petition in the District where he was then-incarcerated. *See Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2717 (2004). This Court's jurisdiction persists, despite the transfer. *Id.* at 2721 ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

[2] *See Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates *pro se* petitions under a more lenient standard. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)). However, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001). And, "under § 2243 it is the duty of the court to screen out frivolous applications[.]" Advisory Committee Notes to Rule 4, Rules Governing § 2254 Cases; *see also Neitzke v. Williams*, 109 S. Ct. 1827, 1831–32 (1989) (describing as "frivolous[,]" claims lacking "an arguable basis either in law or in fact").

1

In September 2009, in the Southern District of Indiana, Corbin pleaded guilty to conspiring to distribute 500+ grams of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count One), and twice possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Six and Seven). *See United States v. Corbin*, No. 2:08-cr-00014-WTL-CMM-8 (S.D. Ind.) (*Corbin I*), ECF Nos. 309 (Second Superseding Indictment),³ 480 (Binding Plea Agreement). Prior to the plea, the Government filed a § 851 notice citing Corbin's two prior "felony drug offenses"; namely, 2002 and 2004 Indiana convictions for, respectively, meth possession and meth trafficking. *Id*. at ECF No. 277. In exchange for his plea, the Government agreed to amend the § 851 notice to remove one prior felony drug conviction. *Id*. at ECF No. 480, ¶ 5. The binding 11(c)(1)(C) agreement also provided that "a sentence within the range of 262 to 327 months' imprisonment and a term of supervised release and fine as imposed by the Court is the appropriate disposition of the case." *Id.* at ¶ 2. For his part, Corbin agreed "not to contest, or seek to modify, his conviction or his sentence or the manner in which it was determined in any proceeding, including, but not limited to, an action brought under 28 U.S.C. § 2255." *See id.* at ¶ 11.

In February 2010, the trial court imposed fully concurrent 262-month (on the § 846 conspiracy) and 120-month sentences (on each of the § 922(g)(1) counts). *Id*. at ECF No. 541 (Judgment). Corbin appealed his judgment and sentence. *Id*. at ECF No. 563 (Notice). In December 2010, the Seventh Circuit dismissed Corbin's appeal based on the plea agreement appellate waiver, noting that Corbin received a bottom-guideline sentence of 262 months and could not "maintain

---

³ The Second Superseding Indictment alleged that Corbin had 4 prior felony convictions: "(1) Resisting Law Enforcement, in Vigo County (Indiana), on or about November 16, 2000; (2) Possession of Methamphetamine, in Vigo County (Indiana), on or about December 16, 2002; (3) Dealing in Methamphetamine, in Vigo County (Indiana), on or about March 3, 2004; and (4) Resisting Law Enforcement, in Vigo County (Indiana) on or about March 3, 2004." *Id*. at 6.

the benefit of the plea agreement while challenging other parts of his conviction, including his sentence." *United States v. Corbin*, No. 10-1693, ECF No. 45 (7th Cir. Dec. 29, 2010, Order) (*Corbin II*).

Five years later, in October 2015, Corbin, via § 2255 motion, challenged his USSG § 4B1.1 Career Offender enhancement. *Corbin I*, ECF No. 670 (Motion). Corbin argued that his two prior convictions for Resisting Law Enforcement could only qualify as "crimes of violence" under the § 4B1.2(a)(2) residual clause, and that the Supreme Court's invalidation of the ACCA residual clause in *Johnson v. United States*, 135 S. Ct. 2551 (2015) should extend to the comparable guideline provision. *Id*. During the pendency of Corbin's motion, the Supreme Court held to the contrary. *See Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (concluding that the advisory nature of the post-*Booker* Guidelines takes the § 4B1.2 residual clause outside *Johnson*'s ambit). Accordingly, the trial court dismissed Corbin's motion. *Corbin I*, ECF No. 694 ("Entry Dismissing" § 2255).[4]

Now before this Court, Corbin argues, again, that his career offender enhancement was erroneous. *See* DE 1-1. Corbin contends that *Beckles* was wrongly decided and/or subsequently overruled because "[t]he residual clause, as used in the guideline definition of crime of violence contained in 4B1.2, has been invalidated by the interplay of" *United States v. LaBonte*, 117 S. Ct. 1673 (1997), *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the 2015 *Johnson* decision, and 28 U.S.C. § 994(h). *Id.* at 8–11. Thus, per Corbin, the trial court improperly relied on the § 4B1.2 residual clause to enhance his sentence, notwithstanding *Beckles*. *Id*. The Court, upon thorough review and for the following reasons, finds that Corbin plainly is not entitled to relief.

---

[4] The trial court directed Corbin "to show cause why [his § 2255] should not be dismissed as lacking merit under *Beckles*." *Id.* Corbin did not respond. *Id.*

3

*First*—In his plea agreement, Corbin knowingly and voluntarily waived the right to appeal or collaterally attack the conviction or sentence. Such waivers are enforceable and apply to proceedings under § 2241. *Slusser v. United States*, 895 F.3d 437, 439 (6th Cir. 2018) ("It is well-settled that a knowing and voluntary waiver of a collateral attack is enforceable.") (citing *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)), *cert. denied*, No. 18-6807, 2019 WL 1005877 (Mem), at *1 (Mar. 4, 2019). For his conviction on the aggravated quantity meth-mixture trafficking conspiracy, given Corbin's prior felony drug offenses, Corbin, absent the Government's § 851-amendment promise, would have been subject to a "mandatory term of **life** imprisonment[.]" 21 U.S.C. § 841(b)(1)(A). Corbin bargained for and received a substantial reduction in the potential sentence he faced in exchange for, *inter alia*, his guilty plea and collateral attack waiver. The Seventh Circuit already enforced the waiver to bar Corbin's direct appeal. *Corbin II*, ECF No. 45. The waiver likewise applies here. *Moser v. Quintana*, No. CV 5:17-386-DCR, 2017 WL 5194507, at *2 (E.D. Ky. Nov. 9, 2017), *aff'd*, No. 17-6421 (6th Cir. June 21,

2018); *Solis-Caceres v. Sepanek*, No. 13-cv-21-HRW, 2013 WL 4017119, at *3 (E.D. Ky. Aug. 6, 2013) (collecting cases).[5] This is a threshold, but far from the only, fatal frailty.

*Second*—Critically, Corbin's claim is not properly cognizable under § 2241. For sentencing challenges, this is the general rule. *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Section 2255 is the proper vehicle for collaterally attacking detention legality; § 2241, rather, is reserved "for claims challenging the execution or manner in which the sentence is served[,]" such as those involving sentence credit computation issues. *Id.* Foundationally, a § 2241 petition does not function as an additional or alternative remedy to the one available under § 2255, a route Corbin already travelled. *Hernandez v. Lamanna*, 16 F. App'x 317, 320 (6th Cir. 2001).

---

[5] The Court recognizes that the burden of raising an affirmative defense typically falls to a defendant. However, § 1915A mandates screening for, among other grounds, a complaint that "fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1); *see also Alexander*, 419 F. App'x at 545 n.3 (citing, in discussing § 2243 screening obligation, § 1915(e) and § 1915A screening standards); *Saccoccia v. Farley*, 573 F. App'x 483, 484 (6th Cir. 2014) (affirming district court's *sua sponte* denial of § 2241 petition "under 28 U.S.C. § 1915A"). Thus, an affirmative defense may justify dismissal at screening if "the allegations in the complaint suffice to establish that ground[.]" *Jones v. Bock*, 127 S. Ct. 910, 921 (2007); *see id.* at 920–21 ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"). Here, Corbin explicitly references his plea agreement, DE 1-1 at 1, "and preemptively alleged" that subsequent developments rendered his agreement to career-offender status ineffective. *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012). "[A] document that is not formally incorporated by reference or attached . . . may still be considered part of the pleadings" if such "document is referred to in the [pleading] and is central to the [ ] claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999). The Court views the explicitly referenced agreement, the foundation for the conviction and presently challenged sentence, sufficiently "central" to Corbin's claims to warrant examination at this screening stage. That analysis, here, reveals a facially dispositive waiver. *See, e.g.*, *Perez v. Ormond*, No. 6:17-cv-72-KKC, 2017 WL 4108922, at *1 (E.D. Ky. Sept. 15, 2017) (concluding, on screening, that petitioner was "barred from challenging his conviction or sentence in this proceeding because the waiver provision in his plea agreement applied to collateral attacks asserted under § 2241") (collecting cases).

Section 2255(e)'s so-called "savings clause"[6] provides an—extraordinarily narrow—exception to this rule. A § 2241 petitioner may invoke the savings clause by showing that the § 2255 remedy is "inadequate and ineffective to test the legality of [ ] detention[.]" 28 U.S.C. § 2255(e); *Martin v. Perez*, 319 F.3d 799, 803 (6th Cir. 2003) (The petitioner faces the § 2255(e) burden.). A prisoner does not clear the § 2255(e) hurdle simple because he failed to file (or timely file) a § 2255 motion or because a previous motion failed. *See Copeland v. Hemingway*, 36 F. App'x 793, 795 (6th Cir. 2002); *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002) (holding that § 2241 is available "only when a structural problem in § 2255 forecloses even one round of effective collateral review"). In other words, § 2241 does not provide prisoners another "bite at the apple." *Hernandez*, 16 F. App'x at 360.

These § 2241 and savings clause limits have, historically, applied with special vigor to sentencing challenges. *Peterman*, 249 F.3d at 462; *Hayes*, 473 F. App'x at 502 ("The savings clause . . . does not apply to sentencing claims."). However, the Sixth Circuit (like several others) has permitted such claims to proceed through § 2255(e) where a new Supreme Court decision—*i.e.*, one issued after the petitioner exhausted his direct appeal and initial § 2255 motion opportunities—clears a path through binding precedent, thus opening the door to an argument previously unavailable to the petitioner. *See Wright*, 939 F.3d at 703 (discussing *Martin*, 319 F.3d

---

[6] Courts alternatively refer to this clause type as either a *savings* clause or a *saving* clause. *Compare Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1886 (2019) ("the FLSA saving clause"), *and Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 896 (6th Cir. 2019) (the FAA's "saving clause"), *with Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012) (§ 2255(e) "savings clause"). The terms are, practically, interchangeable. *See Saving Clause*, Black's Law Dictionary (11th ed. 2019); *Savings Clause*, Black's Law Dictionary (11th ed. 2019). Without expressing any particular preference, the Court here uses the "savings clause" variant, more common in the § 2255(e) jurisprudence. *See, e.g.*, *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016); *Harrington v. Ormond*, 900 F.3d 246, 249 (6th Cir. 2018); *Hayes v. Holland*, 473 F. App'x 501, 501–02 (6th Cir. 2012). *But see Wright v. Spaulding*, 939 F.3d 695, 697 (6th Cir. 2019).

at 804–05) ("[I]n this circuit, a federal prisoner who has already filed a § 2255 motion and cannot file another one cannot access § 2241 just because a new Supreme Court case hints his conviction or sentence may be defective . . . [T]he prisoner must also show that binding adverse precedent (or some greater obstacle) left him with no reasonable opportunity to make his argument earlier, either when he" appealed his conviction or initially sought § 2255 relief.) (emphases, quotation marks, and citations omitted); *accord Hill*, 836 F.3d at 595 (permitting a "petition under § 2241 based on a misapplied sentence" where, among other things, petitioner's argument for relief hinged on a retroactive "case of statutory interpretation" that "could not have been invoked in [his] initial § 2255 motion").[7]

Corbin, seeking passage through the savings clause gateway, points to *Mathis v. United States*, 136 S. Ct. 2243 (2016). *See* DE 1-1 at 3–4. Yet, Corbin fails to link the substance of his current claim—that his "Resisting Law Enforcement" convictions could only qualify as career-offender predicates under, in Corbin's view, the "invalidated residual clause" and thus that the trial court misapplied the § 4B1.1 enhancement (DE 1-1 at 11)—to any *Mathis* holding. Corbin, here,

---

[7] *Hill* offers two (substantially similar, but not identical) three-part tests for analyzing whether a sentencing challenger can access § 2241 through the savings clause. *Compare* 836 F.3d at 595 (requiring "(1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion" and (3) a showing that the sentencing error results in a "miscarriage of justice or a fundamental defect"), *with id.* at 599–600 (emphasizing that *Hill* pertains only to petitions from prisoners (1) sentenced under the mandatory guidelines regime, (2) who "are foreclosed from filing a successive petition under § 2255," and (3) who seek relief based on "a subsequent, retroactive change in statutory interpretation by the Supreme Court"). Later courts and litigants have grappled with reconciling these tests and discerning the intended elemental analysis. *See, e.g.*, *Neuman v. United States*, No. 17-6100, 2018 WL 4520483, at *2 n.1 (6th Cir. May 21, 2018), *cert. denied*, 139 S. Ct. 443 (2018); *Wright*, 939 F.3d at 703 (noting that the parties "debate which of the two similar, but differently worded, three-part [*Hill*] tests" apply). The Court need not plunge into the murky *Hill*-test waters here—or even apply *Hill*'s fundamental defect analysis—however, because Corbin fatally falters at the "no reasonable opportunity" threshold. *See Wright*, 939 F.3d at 705 ("[A] federal prisoner cannot bring a claim of actual innocence in a § 2241 petition through the savings clause without showing that he had no prior reasonable opportunity to bring his argument for relief.").

7

offers no argument that, *e.g.*, the Indiana District Court erroneously looked beyond the elements of the state resisting convictions in finding them qualifying career offender predicates.[8] Thus, *Mathis* does not pertain and gives Corbin no ticket through the savings clause portal.

Foundationally, Petitioner's argument relies on three Supreme Court cases and one statute. Any claim premised on *Johnson*, *LaBonte* (a 1997 decision), or 28 U.S.C. § 994—last modified in 2006, *see* Pub. L. No. 109-304, § 17(f)(1), 120 Stat. 1708 (Oct. 6, 2006)—was available to Corbin when he filed his § 2255 motion. In fact, *Johnson* was the central basis for Corbin's initial collateral attack. *See Corbin I*, ECF No. 670 at 14–15. Thus, to have any hope of savings clause passage, Corbin needed to show that *Dimaya* offered a previously unavailable legal theory undergirding his current claim. *Wright*, 939 F.3d at 705 ("A new case matters only, if at all, because of the *new legal arguments* it makes available."). Petitioner presents no such showing. This, alone, dooms the petition. *Purnell v. United States*, 496 F. App'x 596, 601 (6th Cir. 2012) ("[L]iberal construction of a pro se petitioner's pleadings does not require a court to conjure allegations on a litigant's behalf[.]" (quoting *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)).

Further, *Dimaya* offers no novel gloss to Corbin's claim. Rather, *Dimaya* presents only a "straightforward application" of the "void-for-vagueness doctrine" that "*Johnson* employed." 138

---

[8] In any event, *Mathis*, by its terms, merely applied an "essential rule" set out "more than a quarter century ago." 136 S. Ct. at 2251. Thus, Corbin had ample opportunity to earlier present any argument premised on the categorical approach. *See Wright*, 939 F.3d at 705–06 (noting that *Taylor v. United States*, 110 S. Ct. 2143, 2159 (1990) established the categorical approach). Indeed, Petitioner explicitly argued for application of "the formal categorical approach" in his failed § 2255 motion. *See Corbin I*, ECF No. 670 at 12.

8

S. Ct. at 1213.[9] Corbin had an unimpeded opportunity to present a *Johnson/Dimaya* vagueness argument, as well as any perceived twist premised on *LaBonte* or § 994, in his § 2255 motion. Petitioner launched this variety of attack on his career offender enhancement. *See Corbin I*, ECF No. 670. Moreover, the trial court explicitly gave Corbin an opportunity to address *Beckles*'s impact at that stage. *See id.*, ECF No. 694. The fact that Corbin "failed to seize" the opportunity to present his current challenge to *Beckles*, or that the trial court rejected the initial *Johnson* argument, does not mean that Corbin can "now use [§ 2255(e)] to get another bite at the apple." *Wright*, 939 F.3d at 706. In short, Corbin failed to establish that § 2255 "was 'inadequate or ineffective' to test his sentence." *Id.* (quoting 28 U.S.C. § 2255(e)).

*Third*—Of course, Corbin is no incarcerated innocent. The negotiated plea deal allowed him to avoid a mandatory **life** term, driven by his prior (undisputed) drug felonies. His complaint over career offender status is a waived attack on guidelines application. Moreover, contrary to Corbin's take, *Dimaya* did not question the persisting validity of (indeed, did not even reference) and certainly did not overrule *Beckles*. *See generally Dimaya*, 138 S. Ct. 1204. The two cases simply concern different issues. *See Warrick v. United States*, No. 18-6252, 2019 WL 2299252, at *1 (6th Cir. Mar. 5, 2019) (The *Beckles* Court held "that the rule announced in *Johnson* does not apply to the career-offender guideline because the advisory sentencing guidelines 'are not subject to a due process vagueness challenge.' . . . In *Dimaya*, the Supreme Court, relying on *Johnson*, determined that the residual clause definition of 'crime of violence' contained in Section 16(b) of

---

[9] Even if the *Dimaya* argument was materially distinguishable, Corbin would not be entitled to savings clause relief on that basis. If the theory was novel, it would be, in theory at least, "precisely the type of constitutional claim that c[ould] be pursued in a second or successive § 2255 motion[.]" *Rosello v. Warden F.C.I. Allenwood*, 735 F. App'x 766, 768 n.5 (3d Cir. 2018). Thus, the § 2255 remedy would not be structurally "inadequate" or "ineffective" to test the legality of Corbin's detention. That shuts the savings clause door.

the Immigration and Nationality Act was unconstitutionally vague."). Thus, *Beckles* binds this Court and dictates "that the protections afforded by *Johnson* to defendants sentenced under the ACCA's residual clause cannot be extended to [a defendant like Corbin], who was sentenced as a career offender under an advisory Guidelines scheme." *United States v. Sublett*, 729 F. App'x 380, 383 (6th Cir.), *cert. denied*, 138 S. Ct. 2693 (2018). Corbin has not, here, shown in any way that his career-offender designation is a veritable miscarriage of justice.

For all these reasons, and under the applicable standards, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 1; and

2. The Court will enter a separate Judgment.

This 20th day of November, 2019.

Signed By:
*Robert E. Wier* REW
United States District Judge